**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0170n.06
Filed: March 3, 2005

**No. 02-4382**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| v. | ) | **COURT FOR THE NORTHERN** |
| | ) | **DISTRICT OF OHIO** |
| ERNEST TATE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: MARTIN and ROGERS, Circuit Judges; and BELL, District Judge.**[*]

**PER CURIAM.** On February 14, 2001, the grand jury issued an eight-count superseding indictment against nine defendants. Count I of the superseding indictment charged Defendant-Appellant Ernest Tate and six others with a conspiracy to possess with intent to distribute and to distribute over five kilograms of cocaine and over fifty grams of cocaine base in violation 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The indictment alleged that from 1995 to 2000 the defendants conspired to transport cocaine from California and to distribute cocaine and cocaine base in the Cleveland, Ohio, area. Tate was convicted by a jury and sentenced to 292 months in prison. Tate appeals his conviction and sentence. For

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

the reasons that follow we affirm the conviction and remand for resentencing in light of

*United States v. Booker*, 125 S. Ct. 738 (2005).

**I.**

Tate's first argument on appeal is that the trial court committed prejudicial error when it failed to strike testimony or give a curative instruction when testimony of defendant's previous incarceration came into the record.

Prior to co-defendant Willard Osborn's testimony, both the prosecution and the trial court instructed Osborn not to mention that Tate had been in prison.  Nevertheless, during cross-examination, in response to defense counsel's question whether he had delivered money to Tate's wife for eighteen months, Osborn replied, "[n]ot soon as he went to jails [sic], but probably somewhere around there, afterwards."  Defense counsel asked that the answer be stricken and that the jury be requested to disregard it.  The court said, "I don't understand what's wrong with the answer."  Defense counsel responded that it was nonresponsive.  The court then directed counsel to ask the question again.

Osborn moved for a new trial on the basis of the trial court's failure to strike the testimony or give a curative instruction.  During the hearing on the motion the trial court explained that it had not heard the reference to "jails" and accordingly had not understood defense counsel's request.  Counsel for the government also advised that it did not hear the reference to "jails," and that had it heard this reference it would have requested a curative instruction.

We review a trial court's decision not to grant a mistrial for abuse of discretion. *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994) (citing *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 1991)). On review our primary concern is fairness to the defendant. *Id.* We consider five factors in determining whether a mistrial is warranted after an improper reference: (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant. *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (citing *Forrest*, 17 F.3d at 920). Three of these five considerations concern the government's responsibility for the admission of the improper comment.

There is no question that it was improper for Osborn to comment on Tate's prior incarceration and that a cautionary instruction would have been advisable. Nevertheless, it should have been clear from the trial court's response to the request for a cautionary instruction that the court had not heard or understood the witness' answer. Under the circumstances it was incumbent on defense counsel to clarify why the witness' answer was not responsive and why a cautionary instruction was called for. Furthermore, in this case the government did not solicit the improper response and there is no assertion that the response came in as the result of any bad faith on the part of the government. On the whole it appears that the improper comment was inadvertent, isolated, not clearly stated, and constituted only

a very small part of the total evidence against Tate.  Accordingly, we conclude that the trial court did not abuse its discretion in denying Tate's motion for new trial.

## II.

Tate's second argument on appeal is that the trial court abused its discretion by not permitting defense counsel to cross-examine a witness on his career offender status.

During cross-examination of Osborn, defense counsel asked Osborn whether anyone told him during his plea negotiations that he was subject to the career offender provisions of the United States Sentencing Guidelines.  In response to the government's objection, the trial court ordered the question stricken and advised the jury to disregard it.

The right to cross-examine prosecution witnesses is rooted in the Sixth Amendment. *Wright v. Dallman*, 999 F.2d 174, 179 (6th Cir. 1993).  Nevertheless, a trial court retains broad discretion to limit the scope of cross-examination. *United States v. Chance,* 306 F.3d 356, 385 (6th Cir. 2002) (citing *United States v. Mohney*, 949 F.2d 1397, 1409 (6th Cir. 1991)).  "Trial judges have latitude to 'impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Beverly*, 369 F.3d 516, 535-36 (6th Cir. 2004) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1022 (6th Cir. 1991)).

We review a trial court's rulings on the scope of cross-examination for abuse of discretion.  *Chance*, 306 F.3d at 385.  In assessing whether the trial court abused its discretion, we must decide whether, despite the limitation of cross-examination, "the jury was

otherwise in possession of sufficient information . . . to make a 'discriminating appraisal' of a witness' motives and bias." *United States v. Kone*, 307 F.3d 430, 436 (6th Cir. 2002) (quoting *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir. 1984)).

Cross-examination of Osborn on the issue of his career offender status was not essential to defense counsel's ability to show Osborn's motives and bias. The jury had sufficient information to make a "discriminating appraisal" of whether Osborn was testifying in exchange for lenient treatment at sentencing. During cross-examination Osborn admitted that he had two prior felony convictions before entering his plea of guilty in this case, that the judge told him he was facing ten years to life in prison, that by his plea he was limiting his exposure to a possible sentence of only 11 to 15 years, and that he was testifying on the advice of counsel. Testimony regarding the operation of the United States Sentencing Guidelines would have been cumulative, time consuming, and confusing to the jury. Accordingly, we find no abuse of discretion in the trial court's decision not to allow questioning on the issue of Osborn's alleged career offender status.

### III.

Tate's third argument on appeal is that the trial court deprived him of a fair trial by endorsing and vouching for the credibility of the government and its case.

Co-defendant Lawrence Hackney testified on behalf of the government that he rejected the first plea agreement offered by the government and signed a second plea agreement. Defense counsel moved for production of the rejected plea offer. The government represented that the first and second plea agreements were the same with the

exception of the name of the defense counsel.  After the jury was excused the government advised that the first plea agreement had been destroyed and expressed its concern regarding the implication that it had withheld information from the defense.  In response to a question from the trial judge Hackney advised that he did not sign the first agreement because it stated that the conspiracy involved crack cocaine which was untrue.  When the jurors returned to the courtroom the trial judge instructed them not to presume that the government acted improperly merely because the plea agreement that was rejected by the defendant no longer existed.

Tate assumes that because the government's representations regarding the first plea agreement conflicted with Hackney's testimony the government must have misrepresented the contents of the first plea agreement to the court or else Hackney must have committed perjury.  Tate accordingly contends that the trial court's instruction not to presume any impropriety from the failure to preserve the first plea agreement improperly resolved a factual issue that should have been left for the jury and improperly endorsed and vouched for the credibility of the government and its case.

Because Tate did not object to the trial court's instruction regarding the first plea agreement, we review the instruction for plain error.  FED. R. CRIM. P. 52(b); *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004).  Pursuant to plain error review, if there is plain error that affects a defendant's substantial rights, we may exercise our discretion to notice the forfeited error, but only if the error "seriously affect[s] the fairness, integrity, or public

reputation of judicial proceedings." *Cromer*, 389 F.3d at 672 (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

Contrary to Tate's assertions, by instructing the jury not to draw any presumptions of irregularity from government's inability to produce an unsigned plea agreement, the trial court did not vouch for the government's case or condone a violation of the government's disclosure requirements under *Brady v. Maryland*, 373 U.S. 83 (1963). It is well within the trial court's discretion to cure an unwarranted inference of improper conduct. It is also within the trial court's discretion to limit cross-examination on collateral matters such as the content of a plea agreement that was never signed by the witness. Accordingly, we conclude that the trial court's instruction regarding the unsigned plea agreement did not constitute plain error, much less error affecting substantial rights or the fairness of the proceedings.

## IV.

Tate's fourth argument on appeal is that there was insufficient evidence to convict him of conspiracy to possess and distribute cocaine. Tate does not deny that there was ample evidence that he agreed with others to sell drugs. He contends, however, that the government witnesses were not credible because they were all drug traffickers, who were facing federal drug charges and who would have done anything, including commit perjury, to have their sentences reduced.

"When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor in order to determine whether any rational trier of fact could have found the elements of the

offense beyond a reasonable doubt." *United States v. Robinson*, 389 F.3d 582, 591 (6th Cir. 2004) (quoting *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Id.* (quoting *Spearman*, 186 F.3d at 745). "Furthermore, it is well-settled that uncorroborated testimony of an accomplice may support a conviction in federal court." *Id.* (quoting *Spearman*, 186 F.3d at 745).

In this case the government presented substantial evidence establishing Tate's active participation in the conspiracy, particularly through the testimony of Osborn and Hackney, which was corroborated with the tape recorded phone conversations between Osborn and Tate. Here, as in *Henley*, much of the evidence was from co-conspirators who had an incentive to testify against Tate. Nevertheless, as we said in *Henley*, the credibility of those witnesses was for the jury to decide:

> We certainly recognize that the prospect of a reduced sentence could have provided a powerful incentive for Henley's co-conspirators to testify against him. Whether that incentive affected the credibility of their testimony, however, is for the jury to decide. The jury in this case was aware that Sanders and Luy had reason to believe that they could benefit from a reduction in their sentences as a result of their testimony against Henley. We simply cannot second-guess the jury's determinations with regard to whether and to what extent that motive may have affected those witnesses' credibility.

*Henley*, 360 F.3d at 514.

The jurors in this case were aware that the alleged co-conspirators who testified against Tate had reason to believe that they could obtain a reduction in their sentences as a result of their cooperation with the government. They had the information necessary to enable them to critically examine the witnesses' credibility. Under these facts, we hold that any rational trier of fact could conclude that the United States met its burden of proving that Tate conspired to distribute cocaine.

## V.

Tate's fifth argument on appeal is that the trial court erred in not granting the defendant a two-level reduction pursuant to U.S.S.G. § 3B1.2(b) for being a "minor participant" in the offense. Tate contends that the minimal nature of his role was corroborated by the fact that much of the activity occurred while he was incarcerated.

Under the Sentencing Guidelines, a defendant can receive a four-level reduction for being a minimal participant or a two-level reduction for being a minor participant. U.S.S.G. § 3B1.2. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group," and a minor participant is one who "is less culpable than most other participants, but whose role could not be described as minimal." U.S. SENTENCING GUIDELINES MANUAL § 3B1.2, cmt. nn. 1, 3 (1998). The determination of a defendant's culpability "is heavily dependent upon the facts, and the defendant has the burden of proving mitigating factors by a preponderance of the evidence." *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (quoting *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990)). We review a trial court's denial of a downward adjustment under

§ 3B1.2 "only for clear error." *United States v. Solorio*, 337 F.3d 580, 601 (6th Cir. 2003) (quoting *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002)).

The evidence at trial revealed that Tate was involved in the conspiracy from the start, receiving distribution quantities of cocaine from Osborne on a monthly basis. The fact that Tate was incarcerated for a period of 18 months during a five year conspiracy does not make him a minor participant under 3B1.2(b). Osborn testified that while Tate was incarcerated Osborn sold cocaine on Tate's behalf and gave Tate's girlfriend $2000 a month until Tate was released from incarceration and resumed his regular receipt of cocaine from Osborne. Based upon the evidence at trial, there was no clear error in the trial court's decision not to grant Tate a downward adjustment for his role in the offense.

## VI.

Tate's remaining two arguments on appeal concern the trial court's determination of the amount of drugs attributable to Tate for sentencing purposes. Tate argues that his sentence should be vacated because the trial court relied on inherently unreliable testimony in determining the drug amount and because the amount was not proven beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

On January 12, 2005, the Supreme Court handed down its decision in *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker* the Supreme Court reaffirmed its holdings in *Apprendi* and *Blakely v.Washington*, 124 S. Ct. 2531 (2004), and held that the Sixth Amendment required that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of

guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. The Supreme Court also advised that its holdings in *Booker* – "both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act" – applied to all cases pending on direct review. *Id.* at 769.

The jury found Tate guilty of a conspiracy to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base. Under the Sentencing Guidelines, this quantity carries a base offense level of 32. U.S.S.G. § 2D1.1(c). The trial court, however, determined that Tate was responsible for over fifty kilograms of cocaine, a quantity that carries a base offense level of 36. *Id.* Although the district court's factual findings may be supported by the record, because the federal Sentencing Guidelines were mandatory at the time the district court sentenced Tate, we are constrained under *Booker* to find that the sentence imposed, which was based on a quantity that exceeded that found by the jury, violated the Sixth Amendment. Because Tate objected to the trial court's determination of the quantity of drugs attributable to Tate under *Apprendi*, see J.A. at 269, the sentencing decision is reviewed under a de novo standard. Unless the Sixth Amendment error is shown to be harmless, reversal is appropriate. Because there has been no showing that the error was harmless, Tate is entitled to re-sentencing. *See United States v. Oliver*, No. 03-2126, 2005 WL 233779 (6th Cir. Feb. 2, 2005); *United States v. Bruce*, No. 03-3110, — F.3d. —, 2005 WL 241254 (6th Cir. Feb. 3, 2005).

For the reasons stated herein we VACATE Tate's sentence and REMAND for re-sentencing in light of this opinion and the Supreme Court's opinion in *Booker*. As to the other errors raised by the defendant, we AFFIRM the district court's judgment.